# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DANIEL J. CARRO,

      Plaintiff,

v.                                            Case No. 16-10479

MARY T. BARRA, et al.,

      Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

In February 2014, nominal Defendant General Motors ("GM") announced the first of what would be several recalls of vehicles with defective ignition switches. Tumult followed: lawsuits (including this one), a criminal investigation, Congressional investigations, and government fines—activity largely focused on holding responsible those who had known about the defect but failed to disclose it, a defect alleged to have resulted in deaths and undoubtedly having resulted in financial loss to GM measured in the millions.

Plaintiff Daniel J. Carro is a GM shareholder. He brings this action as a purported shareholder derivative suit against GM and the individual Defendants. He claims that the individual Defendants breached their fiduciary duties and that GM's board of directors wrongfully refused his demand to bring suit against them on behalf of GM's shareholders. (Dkt. #24.) Currently pending before the court are motions to dismiss by the individual Defendants (Dkt. #25) and GM (Dkt. #26). Plaintiff has filed responses (Dkt. ##28, 27) and Defendants replies (Dkt. ##30, 31). The court has determined that a

hearing is unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the following reasons, the court will grant both motions.

## I. BACKGROUND

After the initial ignition switch fallout, Plaintiff sent a letter to the GM board of directors in April 2015 alleging that GM directors and officers had violated their fiduciary duties to GM because they had not detected, publicized, or addressed the ignition switch problem sooner. He demanded that GM's board file suit. The board, in lieu of an immediate response, said it would put Plaintiff's demand on hold; there was a shareholder derivative class action alleging similar facts ongoing in the Delaware Court of Chancery, and the board wanted to await the outcome of a pending motion to dismiss. The Delaware court granted dismissal in June 2015. It held that the shareholder plaintiffs in that case had not pled sufficient facts to demonstrate a "futility of demand" as required under Delaware Chancery Court Rule 23.1. *In re Gen. Motors Company Derivative Litig.*, No. 9627, 2015 WL 3958724, at *17 (Del. Ch. June 26, 2015) ("I find that there is not a substantial likelihood of personal liability on the part of a majority of the Board, excusing demand, and the Motion to Dismiss should be granted for failure to comply with Rule 23.1."). The Delaware plaintiffs appealed that decision, prompting GM's board to again put Plaintiff's demand on hold.

Plaintiff filed his initial complaint in this court in February 2016. He in part alleged that GM's board had not acted reasonably or in good faith in refusing to consider his demand. (Dkt. #1 Pg. ID 5.) The day after his complaint was filed, the Delaware Supreme Court affirmed—in a one sentence decision—the Chancery Court's dismissal

of the Delaware plaintiffs' claims. *In re Gen. Motors Co. Derivative Litig.*, No. 392, 2015, 2016 WL 552651 (Del. Feb. 11, 2016).

A few weeks later, GM's board informed Plaintiff that it would finally consider his demand. It denied his request in June 2016, informing him by letter that the board had refused his litigation demand. Plaintiff requested various documents and reports referenced in the demand refusal letter, but the GM board declined to provide them. Plaintiff eventually moved this court for an order requiring GM to produce the documents. (Dkt. #16.) The court denied the motion. (Dkt. #20.) Plaintiff then filed his amended complaint. (Dkt. #24.)

Plaintiff asserts that the individual Defendants are liable for breaches of their fiduciary duties, and that the board wrongfully refused to hold these individuals to account. He points to various acts GM took during the ignition switch fallout: (1) following an investigation by the National Highway Traffic Safety Administration ("NHTSA") into GM's handling of the defect, GM entered into a Consent Order with that agency; GM admitted that it had violated the Safety Act and agreed to pay the maximum civil penalty of $35 million; (2) GM hired Anton Valukas to conduct an investigation into the affair, and Valukas provided an account of GM's institutional failures (the "Valukas Report"); (3) some of the individual Defendants "admitted" wrongdoing in various public statements; (4) GM entered into a Deferred Prosecution Agreement ("DPA") with the U.S. Attorney for the Southern District of New York; under the terms of that agreement, GM stipulated to an "Acceptance of Responsibility," wherein it admitted that it "failed to disclose to its U.S. regulator and the public a potentially lethal safety defect that caused airbag nondeployment in certain GM model

cars, and that GM further affirmatively misled consumers about the safety of GM cars afflicted by the defect." (Dkt. #24 Pg. ID 294–95); (5) GM settled a lawsuit alleging that it and two of the individual Defendants committed securities fraud: it agreed to pay $300 million "without even awaiting the outcome of its pending motion to dismiss" (Dkt. #27 Pg. ID 440); and (6) as compensation to personal injury plaintiffs, GM has offered around $600 million in settlement funds. In light of this conduct, Plaintiff says in essence, someone must be at fault.

## II. STANDARD

A complaint filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court views the complaint in the light most favorable to the plaintiff, and it accepts all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). It need not, however, "accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

The court primarily considers the allegations in the complaint in determining a Rule 12(b)(6) motion. But "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)). Furthermore, "when a document is

referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

Shareholder derivative suits involve additional pleading requirements. Fed. R. Civ. P. 23.1. Under Rule 23.1(b)(3), a shareholder must "state with particularity" any attempts "to obtain the desired action from the directors or comparable authority." Where a shareholder plaintiff makes a litigation demand on the board of directors, the plaintiff "tacitly concedes the independence of a majority of the board to respond." *Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991) (quoting *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990)), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000). And so the business judgment rule applies: when a board refuses a demand, "the only issues to be examined are the good faith and reasonableness of its investigation." *Spiegel*, 571 A.2d at 777. Of course a plaintiff's through-demand concession of the board's independence is not a for-all-purposes concession; "[f]ailure of an otherwise independent-appearing board or committee to act independently is a failure to carry out its fiduciary duties in good faith or to conduct a reasonable investigation." *Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d 70, 75 (Del. 1997), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000). That is, "a board that appears independent *ex ante* may not necessarily act independently *ex post* in rejecting a demand." *Id.*

In short, Rule 23.1 imposes on a plaintiff the burden to allege particularized facts "rais[ing] a reasonable doubt that (1) the board's decision to deny the demand was consistent with its duty of care to act on an informed basis, that is, was not grossly

negligent; or (2) the board acted in good faith, consistent with its duty of loyalty."
*Ironworkers Dist. Council of Philadelphia v. Andreotti*, No. 9714, 2015 WL 2270673, at
*24 (Del. Ch. May 8, 2015), *aff'd* 132 A.3d 748 (Del. 2016); *see also Levine v. Liveris*,
216 F. Supp. 3d 794, 808 (E.D. Mich. 2016) (Ludington, J.). "The pleading burden
imposed by this standard is a heavy one . . . ." *Id.* While the "pleader is not required to
plead evidence," the pleader must still set forth "particularized factual statements that
are essential to the demand." *Brehm*, 746 A.2d at 254.

"[W]hether the failure to make a demand is excused must be determined under
the substantive law of the state of incorporation." *McCall v. Scott*, 239 F.3d 808, 815
(6th Cir. 2001). GM is incorporated in Delaware. (Dkt. #24 Pg. ID 261.)

### III. DISCUSSION

His litigation demand having been rejected, Plaintiff seeks to hold current and
former GM officers and executives liable for breaches of their fiduciary duties. GM
moves to dismiss on the basis that Plaintiff's litigation demand was not wrongfully
refused. The individual Defendants move to dismiss on the added basis that Plaintiff
has not sufficiently pleaded facts demonstrating their liability.

### A. Nominal Defendant General Motors

Nominal Defendant GM moves to dismiss on the basis that Plaintiff has not met
his burden to plead particularized facts showing that the business judgment rule has
been overcome. In response, Plaintiff sets forth seven bases allegedly showing that the
board was grossly negligent or acted in bad faith.[1]

---

[1] Plaintiff appears to have raised additional arguments of bad faith and gross
negligence in his amended complaint. (*See, e.g.*, Dkt. #24 Pg. ID 328, 330.) Because
those additional grounds appear nowhere in response to GM's motion to dismiss,

"[G]ross negligence is conduct that constitutes reckless indifference or actions that are without the bounds of reason." *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008). The fiduciary duty of care does not require that a board of directors be informed of *every* fact that might factor into a decision; rather, a board is responsible "for considering only *material* facts that are *reasonably available*." *Brehm v. Eisner*, 746 A.2d 244, 259 (Del. 2000) (emphasis original). Gross negligence is a difficult claim to plead because "there is obviously no prescribed procedure that a board must follow." *Levine v. Smith*, 591 A.2d 194, 214 (Del. 1991), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000).

Bad faith, on the other hand, "requires conduct that is qualitatively different from, and more culpable than" gross negligence. *Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006) (citing *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27 (Del.2006)). The Delaware Supreme Court has identified the three "most salient" examples of bad faith conduct: "where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act." *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del.2006). Bad faith requires the directors to "have acted with scienter, *i.e.*, with a motive to harm, or with indifference to harm that will necessarily result from the challenged decision." *Andreotti*, 2015 WL 2270673, at *27. The plaintiff must also show more than some reason to believe that a derivative lawsuit would be successful: "[a] board may in good

---

however, Plaintiff has forfeited them. *Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013).

faith refuse a shareholder demand to begin litigation even if there is substantial basis to conclude that the lawsuit would eventually be successful on the merits." *In re INFOUSA, Inc. Shareholders Litig.*, 953 A.2d 963, 986 (Del. Ch. 2007).

Under these standards, Plaintiff's purported reasons to find gross negligence and bad faith fail for the reasons set forth below.

### i. Reconciliation with the Deferred Prosecution Agreement

Plaintiff argues that the board's refusal to litigate cannot be reconciled with GM's decision to enter into the DPA. GM itself admitted that it engaged in criminal wrongdoing, but the board failed to hold a single person accountable—that, says Plaintiff, means the board's decision could not have been in earnest. The court disagrees.

Plaintiff cites *City of Orlando Police Pension Fund v. Page*, 970 F. Supp. 2d 1022 (N.D. Cal. 2013), in which the court determined that the plaintiff had properly alleged a wrongful litigation demand rejection by Google's board of directors. There, the court found that the plaintiff had pleaded "reasonable doubt" as to the good faith of the board's decision because the demand rejection could not be squared with Google's "acceptance of responsibility" in a non-prosecution agreement. *Id.* at 1031.

But decisions from the Northern District of California do not govern this case; Delaware law does, and Delaware courts have expressly rejected *Page. See Zucker v. Hassell*, No. 11625, 2016 WL 7011351, at *8 n.100 (Del. Ch. Nov. 30, 2016) ("This Court has already declined to follow [*Page*] in a demand-refused context."); *Ironworkers Dist. Council of Philadelphia v. Andreotti*, No. 9714, 2015 WL 2270673, at *28–29 (Del. Ch. May 8, 2015), *aff'd* 132 A.3d 748 (Del. 2016) (rejecting *Page* and noting that the

board's decision not to sue following a sanctions order and a $1.2 billion jury verdict against the company was "not so clearly erroneous as to raise a reasonable doubt" about the board's refusal). There is no rule in Delaware that a corporation's acceptance of responsibility—even criminal responsibility—for certain conduct ipso facto deprives it of the ability to reject, in good faith, a shareholder's demand to sue individual corporate officers. Plaintiff's attempts to do so here are unavailing.

Plaintiff also points to the $300 million settlement agreement, ending a purported securities class action against GM and two of the individual Defendants, as "support[ing] an inference" of wrongful conduct by the settling defendants. (Dkt. #27 Pg. ID 447.) This argument fails for similar reasons. Settlement of a lawsuit does not support an unassailable inference of wrongdoing in every case. This is true even where the timing of the lawsuit (before a court's ruling on a pending motion to dismiss) seems indicative of fault. Delaware courts have held that even a $1.2 billion jury verdict is insufficient, without more, to demonstrate that the board lacked good faith in rejecting a litigation demand. *Andreotti*, 2015 WL 2270673, at *29.

Plaintiff claims, in essence, that his pleading is sufficient to demonstrate wrongful conduct because the DPA's very existence means that the board could not have rejected his litigation demand in good faith. But that is not the law. Even a case so extraordinary as to result in a $1.2 billion jury verdict still requires the plaintiff to identify "just what the breach of duty involved would have been" and "what the damages would have been," such "as would make such litigation an irresistible asset for the Company to pursue." *Id.* at *28. Plaintiff here does not do so, instead relying on the court to draw "inferences" of "wrongful conduct" on his behalf. Even the deference for well-pleaded

allegations under 12(b)(6) does not demand as much, and the court will not impute specific factual allegations where Plaintiff has not made them.

### ii. Failure to Interview Independent Witnesses

Plaintiff next faults GM for failing to interview independent witnesses as part of its investigation into his demand.

In assessing whether a board properly informed itself before coming to its decision, a court uses the gross negligence standard. *Smith v. Van Gorkom*, 488 A.2d 858, 872–73 (Del. 1985), *overruled on other grounds by Gantler v. Stephens*, 965 A.2d 695, 713 n.54 (Del. 2009). "Generally, cavils about the types of documents reviewed, or the choice of persons to be interviewed, in an investigation will not support a finding of gross negligence." *Zucker v. Hassell*, No. 11625, 2016 WL 7011351, at *9 (Del. Ch. Nov. 30, 2016); *see also Belendiuk v. Carrion*, No. 9026, 2014 WL 3589500, at *6 (Del. Ch. July 22, 2014) ("This Court repeatedly has held that a stockholder's criticisms regarding the types of documents reviewed or the persons interviewed in connection with an investigation do not rise to the level of gross negligence.").

Plaintiff's allegation amounts to an attack on the "choice of persons to be interviewed" that is foreclosed by Delaware law. The cases Plaintiff cites in contradiction—*City of Orlando Police Pension Fund v. Page*, 970 F. Supp. 2d 1022 (N.D. Cal. 2013) and *Barovic v. Ballmer*, 72 F. Supp. 3d 1210 (W.D. Wash. 2014)—are not from Delaware and do not address the conflicting Delaware law. And even if Plaintiff were permitted to plead gross negligence for failing to interview independent witnesses, he has not adequately done so here. Plaintiff again makes vague and conclusory allegations that the board's failure to "interview the U.S. Attorney or a federal regulator

is manifestly unreasonable, indeed inexplicable, and can be attributed only to purposeful avoidance." (Dkt. #27 Pg. ID 449.) Not so. As GM points out, its investigation included interviews of the individual Defendants and at least 31 other people. (Dkt. #24-8 Pg. ID 258.) Plaintiff says that this investigation "reflected only one side of the story"—but he does not set forth what, if any, information GM would have learned from interviewing the U.S. Attorney or federal regulators that it did not already know. Plaintiff, in other words, fails to identify what information these parties would have provided that was unavailable elsewhere in the investigation. The court will not do so in his stead.

### iii. Failure to Retain Independent Counsel

According to Plaintiff, GM failed to obtain independent counsel—counsel having no prior relationship to the firm or the ignition switch recall—to conduct the investigation of his litigation demand. That failure, says Plaintiff, is evidence that the board's decision to reject his demand was wrongful.

But if there exists Delaware authority suggesting some such responsibility, Plaintiff has not cited it and the court has not found it. Delaware law, rather, requires Plaintiff to plead "particularized facts (not conclusions) that, if proved, would show, for example, that: . . . the expert was not selected with reasonable care by or on behalf of the corporation, and the faulty selection process was attributable to the directors." *Brehm v. Eisner*, 746 A.2d 244, 262 (Del. 2000); *see also Belenduik*, 2014 WL 3589500, at *6 (citing *Brehm* and finding that the plaintiff had not sufficiently pleaded wrongful rejection of his litigation demand where he had not alleged that the investigating counsel "was not selected with reasonable care or that the matters on which [counsel] offered advice were outside its professional competence"). Here,

Plaintiff alleges only facts that, he argues, point to some inherent conflict between the board and its selected counsel. While dubious whether there was actually a conflict, the court need not decide whether one existed because Plaintiff has not met his burden to set forth facts showing that the counsel was not selected with reasonable care. In short, Plaintiff has failed to plead facts demonstrating that the board's choice of investigating counsel was so reckless or outside the bounds of reason as to constitute gross negligence. Plaintiff's out-of-jurisdiction and factually-distinct cases are not enough to overcome that failure. (*See* Dkt. #27 Pg. ID 449–51.)

### *iv. Failure to Form an Independent Committee*

Because Plaintiff's litigation demand implicated legacy directors who were "personally interested" in his litigation demand, Plaintiff argues that it was "incumbent on the [b]oard to appoint an independent committee of the new directors" to evaluate his demand. (Dkt. #27 Pg. ID 452.)

A litigation demand on the board of directors acts as a plaintiff's admission of "the independence of a majority of the board to respond." *Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991) (quoting *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990)), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000). Plaintiff correctly notes that, in conceding the board's independence by making the demand, a plaintiff has not conceded that the board will in fact act independently. *Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d 70, 75 (Del. 1997), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000). A plaintiff seeking to challenge the independence of a board's decision must therefore allege facts demonstrating that the decision was not made independently because the board violated its fiduciary duties.

To the extent that Plaintiff would argue that the board was incapable of independently assessing his demand from the outset, that claim would be foreclosed by the demand itself. According to Plaintiff, however, the board lost its independence after his litigation demand—but before the board actually considered that demand—when it entered into the DPA. As GM points out, that argument fails for the simple reason that none of the directors of whom Plaintiff complains were implicated by the DPA. Absent particularized allegations showing that the individual Defendants were responsible for the facts admitted in the DPA (an issue more thoroughly addressed below), GM's entry into the DPA—without more—cannot demonstrate that the board lost its independence. Moreover, as GM points out, Plaintiff has alleged nothing demonstrating that the DPA somehow revealed more facts or information not already known to the board as a result of its other investigations and activity. Absent these allegations, Plaintiff cannot show that the board acted with gross negligence or in bad faith.

### v. Improper Limitation of the Scope of Investigation

Though he limited his complaint—filed before the board rejected his litigation demand—to the four named individual Defendants, Plaintiff faults the board for "limit[ing] the scope of its investigation to these officers." (Dkt. #27 Pg. ID 454.)

A proper litigation demand "must specifically state: . . . the identity of the alleged wrongdoers." *Khanna v. McMinn*, No. 20545, 2006 WL 1388744, at *13 (Del. Ch. May 9, 2006). Plaintiff demanded "that the Board investigate and pursue legal claims for breach of fiduciary duty against (a) each director who served on the Board at any time following GM's emergence from bankruptcy in 2009, and (b) each officer or executive with any relevant degree of responsibility for operational, quality, compliance, safety and/or risk

management matters at GM through 2014, including, without limitation, [Defendant] Barra." (Dkt. #24-3 Pg. ID 343.) As to the first category, Plaintiff's claim that the investigation was improperly limited is belied by the demand rejection letter. As GM points out—and Plaintiff does not challenge in response—the demand rejection states that "[t]he Board also concluded . . . that there was no basis for the company to assert claims against any of the individuals who served as outside directors of GM between July 2009 and the date of the Demand." (Dkt. #24-8 Pg. ID 360–61.) As to the second category, Plaintiff's sweeping generality does not amount to a specific statement of the identity of the alleged wrongdoers. Plaintiff's argument that he was not required to identify the alleged wrongdoers by name is inapposite—he was nevertheless obligated to identify them with specificity, a burden he did not meet.

### vi. Improper Reliance on a Stale Demand Report

Plaintiff next argues that the board improperly relied on an investigation conducted for an earlier, similar litigation demand in coming to its conclusion to deny his. Plaintiff's argument on this claim comprises a mere four sentences of his response brief (Dkt. #27 Pg. ID 455–56), and the court could deem it forfeited. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quotation omitted)).

But the court will nonetheless devote appropriate time to at least note and then dispose of Plaintiff's argument. His argument rests on his claim that the older demand was fatally flawed because the update was conducted by conflicted counsel (a claim disposed of above) and because of "target and then-CEO [Defendant] Barra's apparent

vote against the [earlier demand], an inexplicable conflict." (Dkt. #27 Pg. ID 456 (emphasis original).) Plaintiff makes nothing but conclusory allegations to support his claim that Defendant Barra voted against the earlier demand. And, as GM notes in its motion (but Plaintiff does not address in response), Plaintiff alleges no facts showing that Defendant Barra took part in the *investigation* of the earlier demand—what the board actually relied on—as might be relevant here. Plaintiff has not adequately alleged that the board acted with gross negligence or in bad faith by relying on the earlier investigation.

### vii. Purported Risks of Pursuing Claims

Plaintiff pays equally scant attention to his final argument: though the board cited various risks associated with pursuing his litigation demand, it provided no evidence to back them up. Plaintiff argues that those "risks" should therefore be ignored.

"The decision to bring litigation on behalf of a corporation is a quintessential exercise of business judgment, involving as it does a complex array of costs (both monetary and otherwise), potential benefits, and the risk of uncertain outcomes." *Andreotti*, 2015 WL 2270673, at *25. A board may thus refuse, in good faith, to pursue what may otherwise be a successful lawsuit on the grounds that the lawsuit's costs would outweigh any potential recovery. *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 986 (Del. Ch. 2007).

GM's demand refusal letter cited a number of reasons why it believed that pursuing claims would ultimately be more harmful to the company. It described the potential inability to get directors and officers liability insurance, the effect on company morale, and the inability to attract qualified employees to the company. (Dkt. #24-8 Pg.

ID 361.) On their face, these concerns are legitimate. And Plaintiff has cited no authority that would require the board to more fully quantify them. Indeed, accurate quantification of these risks would be a nearly impossible task.

Plaintiff has not set forth facts contradicting GM's entitlement to the presumption of the business judgment rule. Nor has he done so with respect to the individual Defendants.

### B. Individual Defendants

Unsatisfied with the board's decision not to pursue litigation against alleged wrongdoers, Plaintiff has brought claims against four individual Defendants for breaches of their fiduciary duties. He also makes a claim for contribution and indemnification. (Dkt. #24 Pg. ID 331–32.)

Corporate officers, like directors, owe fiduciary duties of care and loyalty. *Gantler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009). Lack of due care involves conduct "taken solely by reason of gross negligence and without any malevolent intent." *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64 (Del. 2006). Gross negligence, as defined above, is "conduct that constitutes reckless indifference or actions that are without the bounds of reason." *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008). The duty of loyalty, on the other hand, is breached through bad faith. *Id.* As noted above, bad faith has been described by the Delaware Supreme Court as involving situations "where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act," *Walt Disney*, 906 A.2d at 67.

Plaintiff has not alleged facts showing that the individual Defendants are liable for breaches of their fiduciary duties. As Plaintiff's briefing makes clear, his amended complaint is best characterized as a fishing expedition against the individual Defendants. For that reason, his claims against them are properly dismissed.

### i. Mary Barra

Defendant Mary Barra is the current CEO of GM. Plaintiff's allegations against Defendant Barra amount to the following: Defendant Barra "received early emails regarding GM recalls raising technical issues very similar to those plaguing vehicles equipped with the defective ignition switches" (Dkt. #24 Pg. ID 303); other stock purchasers brought federal securities claims against certain GM defendants and Defendant Barra personally, and the claims were settled for $300 million before the court decided Defendants' pending motion to dismiss (*Id.* at Pg. ID 305); and Defendant Barra "admitted" to having responsibility for the ignition switch defect scandal, as she made statements like "we need to change behaviors, and that includes me" (*Id.* at Pg. ID 301 (emphasis omitted)).

These allegations are insufficient to state a claim for breach of fiduciary duties. Setting aside whether emails about a different recall could put Defendant Barra on notice of the ignition switch problem, Plaintiff makes no allegations regarding what Defendant Barra did in response to those emails. A financial settlement, even a large one, moreover, is not conclusive evidence of wrongdoing by a particular defendant, nor a substitute for particularized allegations that Defendant Barra committed violations of federal securities laws. And Defendant Barra's "admissions" of corporate failure— statements that are unsurprising in light of the magnitude of the ignition switch failure—

are insufficient to establish fiduciary duty liability where Plaintiff has pleaded no facts demonstrating such a breach.

### ii. Daniel Akerson

Defendant Daniel Akerson was CEO of GM from 2010 to 2013. Plaintiff alleges that Defendant Akerson oversaw GM while the company "engaged in crimes resulting in disastrous consequences." (Dkt. #28 Pg. ID 477.) Plaintiff further alleges that, like Defendant Barra, Defendant Akerson was part of the sizeable settlement of federal securities claims brought against GM and various individuals at GM. (Dkt. #24 Pg. ID 308.) Finally, Plaintiff says that Akerson's abrupt departure from GM is indicative of his knowledge that there was wrongdoing at the company. (*Id.* at Pg. ID 307–08.) Plaintiff summarizes: "But what [Defendant] Akerson did and whether he performed as CEO consistent with his legal duties is for later in the proceedings." (Dkt. #28 Pg. ID 477.)

To the contrary. Plaintiff's allegations about Defendant Akerson and whether he breached his fiduciary duties are precisely at issue on Defendants' motion to dismiss. At this point, Plaintiff has raised no more than a specter of wrongdoing, relying on the idea that "[i]n a corporate failure of this magnitude," someone must be at fault. (Dkt. #28 Pg. ID 477–78.) He asks the court to draw "reasonable inferences" and assume that some breach of some fiduciary duty must have happened at some point. Even under the deferential standard on a motion to dismiss, Plaintiff asks too much.

### iii. Michael Millikin

Defendant Michael Millikin was General Counsel of GM from 2009 to early 2015. (Dkt. #24 Pg. ID 310.) Plaintiff alleges that several lawyers in GM's legal department knew of the ignition switch failures, but did not "elevate the issue." (*Id.*) Defendant

Millikin, however, admitted that in his position as general counsel, "I am ultimately responsible for the legal affairs of the company." (*Id.* (emphasis omitted).) Plaintiff argues that Defendant Millikin is liable for breaches of fiduciary duties because he failed to put written policies into place that would have ensured that the ignition switch failures were brought to his attention. (*Id.* at Pg. ID 313.)

Plaintiff again fails to make any specific factual allegations against Defendant Millikin showing a breach of fiduciary duties. He nowhere alleges that Defendant Millikin knew about the ignition switch defect. Nor does he set forth factual matter that, accepted as true, would be sufficient to show conduct constituting "reckless indifference or actions that are without the bounds of reason" sufficient to meet the gross negligence standard. *McPadden*, 964 A.2d at 1274. He likewise has not shown that Defendant Millikin intentionally acted with a purpose other than that of advancing the best interests of GM, that he intended to violate positive law, or that he intentionally failed to act in the face of a known duty. *Walt Disney*, 906 A.2d at 67. Indeed, Plaintiff alleges nothing about Defendant Millikin's intention at all. He instead relies on conclusory statements such as "[D]efendant Millikin knew that [GM's] internal controls regarding legal, safety[,] and regulatory compliance were critical to GM's continuing operations as a car manufacturer." (*Id.*) Such allegations are insufficient to withstand a motion to dismiss.

### iv. John Calabrese

Defendant John Calabrese was Vice President of Global Vehicle Engineering in 2014. According to Plaintiff, Defendant Calabrese was aware in 2013 that the NHTSA viewed GM as "one of, if not the worst offender of the regional recall policy." (Dkt. #24 Pg. ID 315.) Despite that knowledge, and despite knowing in late-2013 that the ignition

switch failures had caused fatalities, Defendant Calabrese voted not to recall vehicles affected by the ignition switch failures until late January 2014. Plaintiff says that these allegations support "an inference of [Defendant] Calabrese's . . . 'reckless indifference' and 'extreme departures' from ordinary care." (Dkt. #28 Pg. ID 479.) Defendant Calabrese's reasons for voting to delay the recall, Plaintiff argues, "can be explored in discovery." (*Id.*)

Once again, not so. Evidence may await discovery, but specific factual allegations may not. Plaintiff was required to plead sufficient factual matter that, accepted as true, would state a plausible claim for relief against Defendant Millikin. Plaintiff's conclusory allegations that Defendant Calabrese should have taken some other course of action, and that his chosen course therefore amounts to "reckless indifference," is not enough. As presented, Plaintiff has not alleged specific facts allowing this court to find that Defendant Millikin's conduct was so outside the bounds of reason as to constitute gross negligence. Nor has Plaintiff alleged specific facts showing that Defendant Millikin intentionally acted in a way that would constitute bad faith. *Walt Disney*, 906 A.2d at 67.

### *v. Contribution and Indemnification*

Plaintiff having failed to state a claim for breach of fiduciary duties against any of the individual Defendants, his claim for contribution and indemnification necessarily fails.

### IV. CONCLUSION

That things went wrong, may have been handled poorly, or even amounted to a "corporate disaster," to use Plaintiff's term (Dkt. #27 Pg. ID 456), is not *ipso facto*

evidence of gross negligence or bad faith by a board or particular corporate officers.

That the ignition switch problems arose, and resulting fallout occurred, in other words,

does not relieve Plaintiff of his burden to set forth specific and articulable facts showing

that the board is not entitled to the favorable presumption of the business judgment rule,

and to show that individual board members breached one or more fiduciary duties. He

has not done so, and all Defendants are entitled to dismissal. Accordingly,

IT IS ORDERED that the individual Defendants' Motion to Dismiss (Dkt. #24) is

GRANTED.

IT IS FURTHER ORDERED that Defendant GM's Motion to Dismiss (Dkt. #25) is

GRANTED.


s/Robert H. Cleland                          /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 28, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, March 28, 2018, by electronic and/or ordinary mail.

s/Lisa Wagner                             /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\16-10479.CARRO.grant.dismiss.KNP.RHC.docx